RIEMER BROS., INC., Plaintiff-Appellee, *v.* MARLIS CONSTRUCTION CO., Defendant-Appellant.

Second District No. 77-152

Opinion filed September 14, 1978.

Ray W. Fick, Jr., and P. Jane Rutherford, both of Herrick, McNeill, McElroy & Peregrine, of Chicago, for appellant.

David A. Decker, of May, Decker & Assoc., of Waukegan, for appellee.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

This is the second appeal based upon the meaning of the language in an earth moving contract:

"Import, grade and compact clay fill $2.75 cu yd."

In the original suit filed by the fill contractor the trial court in a bench trial awarded Riemer Bros. $20,809.24 as the balance due, a judgment which we reversed on appeal and remanded for a new trial. (*Riemer Bros., Inc. v. Marlis Construction Co.*, 37 Ill. App. 3d 842 (1976).) Following a bench

trial on remand judgment was entered in favor of Riemer Bros. for $26,386.25 and the land developer Marlis has again appealed.

In the first suit the trial judge found the contract language which we have quoted above to be unambiguous, held that therefore no extrinsic evidence could be produced to explain the intention of the parties; and based its judgment on the construction that the language required payment for each cubic yard brought to the site before grading and compacting. In our previous opinion we noted that "even if" the language were conceded to be unambiguous and open to the construction based on fill brought to the site the amount delivered could not be proved by the showing which was made, for Riemer had testified that it was to be by "cross section" yet the proof was of the number of truckloads and Riemer's estimate of an average load for each truck with a "spot check" of one out of every three or four trucks. We noted that Riemer's agent on the job had discouraged Marlis' employees from checking the truckloads as being irrelevant; that no truck tickets were produced and that there was a great discrepancy in Riemer's computation based on the truckloads and the amount of 33,264 cubic yards which was stipulated to be in place. We further noted that there was an improper reference to a notation which was not part of the contract which was offered to show possible shrinkage to account for some of the difference. 37 Ill. App. 3d 842, 845-48.

On remand, the trial court perhaps finding a suggestion in our opinion that the contract was ambiguous although we did not directly reach the issue, permitted extrinsic evidence in explanation of the contract terms. Marlis' expert witness Louis Hooper testified that there were two customary methods of measuring clay fill in earth-moving contracts, either by cross-sectioning of the area to be filled before and after the fill was put in place or cross-sectioning of the borrow pit before and after the fill was removed. He said, however, that a truckload measure would be unusual for clay fill since clay when dumped into a truck leaves a substantial number of voids or air pockets.

John Gnaedinger, plaintiff's expert, testified that in addition to the cross-sectioning methods which Hooper had described truckload measure was another typical mode of measuring clay fill. It appears in context that he was describing a simple quantitative measure of the loose clay in the trucks.

The further proof on behalf of Riemer sought to support its theory that the contract called for in-truck measurements. Riemer kept "trip sheets" or daily driver's reports, which were introduced and indicated that some 3,438 truckloads were hauled onto the construction site. Conrad Riemer, an officer of plaintiff, testified that the trucks were weighed after being loaded and that they sought to get the total weight of the trucks as close as possible to the legal limit of 72,000 pounds. Since the trucks themselves

each weighed 31,000 pounds, something in excess of 38,000 pounds of clay fill was computed per truckload, the volume of the loose clay being about 14 cubic yards. Riemer testified that he did not have his drivers give receipts to Marlis for each truckload for various reasons including the fact that it required a prohibitive amount of time to have each driver stop, fill out a receipt and tender it to a Marlis employee and because he deemed Marlis to be trustworthy. Riemer Bros. sent several interim bills to Marlis, however, based on cross-section measurement to which a 20% shrinkage factor was applied; this would approximate the in-truck "loose" clay volume measure.

Ralph Markus, president of Marlis, testified that on the first or second day upon which the fill was being hauled he spoke to Bob Redfield, the field superintendent for Riemer. At this time he said Marlis had engaged a man to count the number of Riemer trucks coming onto the project. Markus testified that Redfield told him that it was ridiculous to count the trucks because "you don't know what's in there and we're going to measure the job in-place, compacted in-place." Redfield denied ever making the statement and testified that he merely told a Marlis employee that "each truck had a trip sheet, and that at any time if he so desired, he may look at these trip sheets to get the truck count for the day." Markus also testified to a conversation he had with David Riemer, an officer of the company, and Tom Boucher on the same day as the previous alleged conversation in which he said that Riemer told him it would be measured in place and that it was not necessary to measure the trucks or count the trucks and there was no need to get the tickets. David Riemer also denied that such a conversation ever took place. Markus further testified that Conrad Riemer told him before the commencement of the job that "the price would be $2.75 a yard delivered to the site and compacted in place." Again Riemer denied that any such conversation had ever occurred.

As pertinent the judgment order appealed from states:

> "1. That it was the intent of the parties and the meaning of the language in the contract to wit; 'Import, grade and compact $2.75 a cubic yard' that the defendant was to pay to the plaintiff $2.75 *for each cubic yard of clay fill which the plaintiff imported to the job site and thereafter graded and compacted.*" (Emphasis added).

> "2. That in compliance with the foregoing terms of the contract the plaintiff imported to the job site a total of 3,438 loads of clay fill at the rate of 12.2 cubic yards per load or a total of 41,944 cubic yards which plaintiff spread and compacted in accordance with the terms of the contract."

We construed similar language in the earlier judgment, concluding that the judge meant loose measure obtained by applying a shrinkage factor of 20% to the cross section measure stipulated by the parties (37 Ill. App. 3d

842, 844). The court is apparently holding that the contract calls for loose measure. The parol evidence, however, in our view does not support this finding.

We think that the trial court could properly determine that the contract was ambiguous since arguably the language in question could reasonably be construed to mean either the $2.75 per cubic yard as measured at the moment when the clay was first brought onto the site including air pockets or as measured by weight divided by density to exclude the payment for the air pockets.

■ ■ Parol or extrinsic evidence is admissible to explain or supplement ambiguous or uncertain language in a contract. (See, *e.g.*, *Weiland Tool & Manufacturing Co. v. Whitney*, 44 Ill. 2d 105, 114 (1969); see also *Killarney Water Co. v. Illinois Commerce Com.*, 37 Ill. 2d 345, 349-50 (1967).) In the instant case, Mr. Markus, an officer of the defendant, testified that Conrad Riemer, who signed the contract in issue on behalf of the plaintiff told him before the commencement of the job that "the price would be $2.75 a yard delivered to the site and compacted in place." Mr. Markus also testified to similar representations allegedly made to him by David Riemer, an officer of the plaintiff, and by Bob Redfield, field superintendent for the plaintiff. Conrad Riemer, David Riemer and Bob Redfield all denied that they had made such representations to Mr. Markus. The trier of fact apparently believed the Riemer witnesses in this regard since he did not find that the contract called for in-place measure. A reviewing court will not substitute its judgment as to the credibility of witnesses for that of the trier of fact who had the opportunity to see and hear them, unless his findings are contrary to the manifest weight of the evidence. (*Brown v. Zimmerman*, 18 Ill. 2d 94, 102 (1959); see also *Stilwell v. Continental Illinois National Bank & Trust Co.*, 31 Ill. 2d 546, 549 (1964).) We are unable to say that the trial court's implicit finding that the Riemer witnesses did not tell Markus that the contract called for in-place measurement is against the manifest weight of the evidence. Hence, we must conclude that there is no credible evidence in the instant case of any conversations between the principals of the plaintiff and the defendant that would tend to elucidate the true meaning of the contract.

■ ■ In addition, this case would appear to be governed by the Commercial Code since it involves the "sale of minerals or the like * * * to be severed [from the land, *i.e.*, the borrow pit] by the seller." (Ill. Rev. Stat. 1977, ch. 26, par. 2—107.) Under the Commercial Code an ambiguous contract can be construed by reference to (1) course of performance; (2) prior course of dealing; and (3) usage of trade. Ill. Rev. Stat. 1977, ch. 26, par. 2—208.

The only possible course of performance evidence consists of the

interim Riemer bills for the fill which were based upon loose measure computed by in-place measure plus a 20% shrinkage factor. However, no evidence was adduced to indicate that Marlis knew it was being billed on this basis; and Markus' testimony on behalf of Marlis indicates that he did not know the basis of the interim bills. Thus, we conclude that there is no relevant course of performance evidence in this case. (*Cf. Schneider v. Neubert*, 308 Ill. 40, 43 (1923).) And there is no evidence of any prior course of dealing between the parties to assist us in determining the meaning of the words used. *Cf. Lincoln Mining Co. v. Board of Education*, 212 Ill. App. 586, 592 (1918).

"A custom or usage to become binding upon the parties must have antiquity as well as uniformity and universality and have continued for a sufficient length of time that the parties must have contracted in relation to it." (*Marler v. Moultrie-Shelby Farm Service*, 11 Ill. App. 3d 204, 207 (1973). See also *Metro-Goldwin-Mayer, Inc. v. ABC-Great States, Inc.*, 8 Ill. App. 3d 836, 838 (1972).) In the instant case evidence was adduced as to the "customary price" for clay fill, loose measure, in the year 1973. The evidence indicated that $2.75 per cubic yard would have been a usual price for clay fill, loose measure, in that year; the evidence also indicated that $2.75 per cubic yard would have been an unusually low price for clay fill, in-place measure, for 1973. However, no evidence was introduced that this "usual price" for clay fill, loose measure, was of "long standing" or could be traced to "antiquity." Indeed, the evidence suggests that the price for clay fill, by any measure, fluctuated from year to year. It thus appears that the evidence that the plaintiff introduced as to the existence of a "usual price" for clay fill, loose measure, in the year 1973 does not establish a custom or usage of trade which would cause the phrase, "$2.75 per cubic yard of clay fill," to mean, "$2.75 per cubic yard of clay fill, loose measure." Hence, we conclude that there is no evidence of custom or usage in the instant case which would be of assistance to the court in determining the meaning of the contract in issue. In this context, see, *e.g., Oppenheimer Bros., Inc. v. Joyce & Co.*, 20 Ill. App. 2d 34, 42 (1958).

■ ■ At best we must resort to the rule that ambiguous words will be construed against their author, here, Riemer. (See, *e.g., Bost v. Paulson's Enterprises, Inc.*, 36 Ill. App. 3d 135, 141 (1976). See also *Harris v. American General Finance Corp.*, 54 Ill. App. 3d 835, 840 (1977); Corbin on Contracts §559, at 526-27 (1952).) This would require the conclusion that the contract be construed to read $2.75 per cubic yard of *compacted* clay."[1]

---

[1] It seems apparent that the trial judge's mode of calculating the quantity of clay brought onto the site resulted in a figure that essentially represented the quantity of compacted in-place clay rather than the amount of loose clay. The judge implicitly rejected the truckload measure advocated by the plaintiff, that is 3,438 truckloads times 14 cubic yards per

Since by the stipulation of the parties 33,264 cubic yards of compacted clay was put in place by cross-section measure, on the record before us the defendant should not be required to pay for more. This figure, of course, does not take into account all the lateral and subjacent displacement which would increase the figure. However, the plaintiff's expert did not offer any precise evidence as to the amount of lateral or subjacent displacement. The 33,264 cubic yards stipulation, according to Conrad Riemer's testimony, did, however, take into account at least one aspect of the lateral displacement that took place at the job site. While the stipulation does not make any allowance for subjacent displacement and does not take into account all the lateral displacement, it does not appear likely that the amount of total displacement could any longer be proved even if the case were remanded.[2] We therefore conclude that since Marlis has already paid for 32,329 cubic yards, it is required to pay only for the difference which computes to the amount of $2,571.25.

We therefore reverse the judgment of the trial court and enter judgment here in favor of Riemer Bros., Inc., a corporation, in the amount of $2,571.25.

Based on this determination we do not reach the other claims of error raised by the defendant as to various rulings of the court in refusing evidence offered by the defendant.

Judgment reversed, with judgment entered here.

GUILD and WOODWARD, JJ., concur.

---

truckload which would result in a figure of 48,132 cubic yards. Rather he apparently first divided the average weight per load (38,000 pounds) by the density of clay as established by the Illinois Drilling & Testing Co., *i.e.*, 3,067.2 pounds per cubic yard, to obtain 12.2 cubic yards per load; next he multiplied 12.2 cubic yards (with no explanation of the missing .189 cubic yards) by 3,438 truckloads to arrive at the 41,944 cubic yard total. The judge apparently did not take into account the fact that the clay fill on the truck was "watered" which defendant's expert testified would account for 2% of the total weight. (According to plaintiff's expert's testimony "wetness" would account for somewhat more than 2% of the total weight.) Also, the judge did not take into account plaintiff's expert's testimony that the density of the clay may have been greater than 3,067.2 pounds per cubic yard. Moreover plaintiff's expert's testimony suggests that if 25% is a reasonable shrinkage factor as Riemer contends and if each truck carried about 14 cubic yards of loose clay as Riemer further contends then the amount of compacted clay per truck would only be 10.5 cubic yards. This would mean that each truck carried on the average considerably less than 12.2 cubic yards of compacted clay making the total of 41,944 cubic yards found by the court irreconcilable with the testimony of plaintiff's own expert as well as contrary to the testimony of defendant's expert Louis Hooper.

[2] Conrad Riemer testified that, in his opinion, it would be virtually impossible, at this time, to determine the amount of subjacent displacement that took place.